Filed 6/26/14  In re D.B. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re D.B. et al., Persons Coming Under the Juvenile Court Law. | B251436 (Los Angeles County Super. Ct. No. CK91669) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LEON B. et al., <br><br> Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Reversed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant Leon B.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant L.C.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

Parents appeal from a juvenile court's jurisdictional findings as to a Welfare and Institutions Code section 387[1] petition. They contend there is insufficient evidence to sustain the court's findings that its previous disposition was ineffective in protecting their children. We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

*Voluntary Service Plan*

In October 2011, respondent Department of Children and Family Services (DCFS) responded to a referral regarding newborn A.B. and her one-year-old brother, D.B., after the children's mother, appellant L.C. (mother) tested positive for marijuana at the time of A.B.'s birth. A.B., who was full-term and born without medical concerns, tested negative for drugs. Mother admitted using marijuana twice in January 2011, before she knew she was pregnant, but denied having a history of drug use. Mother lived with the children's father, appellant Leon B. (father) and D.B. in the clean, appropriately furnished and well-supplied home of the children's maternal grandmother.

The parents agreed to a safety plan, which provided that mother would refrain from drug or alcohol use and submit to on-demand testing. Father agreed to protect the children from mother's drug use, and not allow mother to be alone with them.

Mother had positive drug tests in early November and mid-December 2011. A team decision meeting (TDM) was held. At the TDM it was agreed that the children would remain with mother and maternal grandmother, and that mother would receive voluntary family maintenance services and enroll in a drug treatment program with random testing. Mother failed to comply with that program. She missed three drug tests, and failed to stay in touch with DCFS. She was not present for three unannounced visits by DCFS. The maternal grandmother told DCFS that mother and the children were most likely with father at the paternal grandfather's home, but had no contact information.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

*Initial Petition*

DCFS assessed the children as high-risk and initiated dependency proceedings, filing a nondetained section 300 petition on February 1, 2012. The children were permitted to remain in the parents' custody, and the family resided in the maternal grandmother's home.

A DCFS social worker visited the family at home in March. The children were dressed appropriately in clean clothing, and appeared comfortable with the parents. The children were assessed and had no problems, apart from A.B.'s diaper rash for which mother was providing appropriate care.

Mother told the social worker she had used marijuana before she knew she was pregnant, then stopped using until mid-September 2011. She did not think it would hurt the baby. Mother used marijuana a few times after A.B.'s birth. She had not used it since January 2012 and never used marijuana in front of the children. She did not believe marijuana affected her parenting. DCFS reported that mother had been in compliance with the drug testing requirement since February 2012, had enrolled in a substance abuse program in early March 2012, and was scheduled to attend NA meetings twice weekly.

Mother, who was 20 years old, had no criminal record. Father, who was 23 years old, had a juvenile record, and an outstanding warrant to resolve. Father lived with the paternal grandfather. Father had not known mother used marijuana until DCFS told him. He attended NA meetings with mother to support her. Both parents were employed and bonded with their children. The children were healthy and had met appropriate developmental milestones. In April 2012, father moved into maternal grandmother's home to be with mother and the children.

In June 2012, in accordance with DCFS's recommendation, the court declared the children dependents (§ 300, subd. (b)), and ordered them placed in the parents' custody, on the condition that father not drive with them in the car until his outstanding traffic-related warrants were resolved. DCFS was ordered to provide family maintenance services.

Things went well for a few months.  In September, DCFS reported that mother had completed a drug program, consistently tested negative and missed no tests.  Mother consistently attended an outpatient program, and participated in counseling three times a week.  She was perceived as a "compassionate, loving mother" who took responsibility for her actions.  Mother had not attended a parenting program.  However, in 2010, she had completed a semester of child development at college.  Father went to NA meetings with mother, regularly attended a drug awareness program, and was aware of the negative effect of drugs on children.  He still had an outstanding warrant, but had a court date scheduled in December—the first available date—to resolve the matter.  The children had received appropriate medical care and immunizations, and DCFS expressed no concerns about their care or development.  Both parents wanted this dependency matter closed, and felt they no longer required services.

DCFS scheduled TDM's with the parents in August and September 2012, and attempted home visits.  The parents missed the TDM meetings and were not home when the social worker twice tried to visit.  DCFS concluded the parents were evading the social worker, and remained concerned about mother's drug use.  It recommended the court continue family maintenance services, including a parenting program.  In September 2012, the court continued the matter for a contested hearing because the parents wanted their case closed.  Following that hearing in October 2012, the court concluded that the case should remain open, the children should remain in the parents' custody, that DCFS should visit at least once a month, and that mother should submit to on-demand testing.

*Section 387 Petition*

DCFS continued to experience difficulty contacting the parents through November 2012.  They did not make themselves available for scheduled home visits, and the social worker assigned to the case believed they did not understand the mandate for them to cooperate with DCFS.  Mother did not drug test between September and December 2012.  A December 6, 2012, drug test was positive for marijuana.  Mother claimed she had been under stress.  Her drug tests from January through March 2013 were negative.

4

In mid-February 2013, DCFS received a child abuse referral for neglect at the home of the paternal grandmother alleging that three children, ages 1, 2 and 3, were at risk because the apartment lacked operative utilities, had no stove or food, and the children were seen begging for food. An investigation revealed the home was uninhabitable. The social worker saw mother at the home with one child, but she hurriedly left before the social worker was able to interview her. The social worker reported that father also had been seen with the children several times at this address, but he refused to identify himself or the children during the investigation. DCFS never confirmed that the children in the referral, whose identities remained unknown, belonged to mother and father, or that the parents had ever lived at the address. Mother called the social worker to say she had gone to paternal grandmother's home to help her move after the grandmother was evicted. She said the hungry children in the referral were not D.B. or A.B.; the paternal grandmother had many young grandchildren.

At a TDM in early March 2013, the parents informed DCFS they had taken the children to the paternal grandmother's home for short periods of time. The social worker reminded them that the children were not permitted to go to the home of either the paternal grandmother or grandfather, at least until those grandparents had been live-scanned. The record does not indicate that the parents took the children again to the home of either paternal grandparent.

In March 2013, DCFS learned that father had been arrested in September 2012. The incident occurred after father—in violation of the juvenile court order—drove a car with mother and the children as passengers and was pulled over by the police who suspected the car had been used in a robbery. Father was arrested for driving with a suspended license, and for having outstanding warrants. Father was released with a promise to appear on this incident, but failed to appear in court.[2] Mother said the car was

_____

[2] There was no evidence he drove with the children in the car after September 2012.

hers and she and father were the primary drivers, although maternal grandmother used it on occasion. She explained that the family had been at a party in September at which she, but not father, consumed alcohol. That was why father drove the car. The social worker was concerned because the parents failed to report the incident to DCFS.

On March 19, 2013, DCFS requested that the juvenile court issue a warrant for the removal of the children from the parents. That request was based on the new information regarding the incident in September 2012 in which father had driven with a suspended license, the fact that father was not attending a parent education program, the children's having been taken to the paternal grandmother's home, and mother's positive drug test in December 2012. The social worker believed removal was necessary as the parents had not demonstrated their awareness of situations that placed their children in danger. DCFS now assessed the children to be at "high" risk, and believed the parents required additional services to ensure the children's safety. The removal warrant was approved.

On March 29, 2013, DCFS filed the supplemental petition which is the subject of this appeal. (§ 387.) That petition alleged that mother had a history of substance abuse, a positive drug test in December 2012, and was a current abuser of marijuana. It also alleged that in August 2012, father had been cited for driving with a suspended license.[3] In a report submitted at the time the section 387 petition was filed, DCFS noted that since December 6, 2012, mother's drug tests had been negative, and that father had been arrested in early September, and had three court dates scheduled to clear his warrants. At the close of the hearing, the court retained the children in the parents' custody.

In April 2013, DCFS reported that the children remained in their parents' care, and appeared physically to be doing well. D.B. had received a referral for a moderate speech impairment, and A.B. was developmentally on target. Mother had been a no show for drug tests on February 27, March 14 and April 10, 2013. She tested negative on

---

[3] According to the police report, this citation was issued in September 2012.

February 26 and March 6, 2013. Father had gone to court and obtained community service, but still had outstanding warrants.

The parents became less cooperative with DCFS after the section 387 petition was filed. They declined to be interviewed for DCFS's April 29, 2013 report and, on April 4, 2013, refused access to a social worker for an announced home visit. DCFS did not believe the parents were complying with the case plan. In addition, because the social worker had not been able to ensure the children's safety by inspecting the home, DCFS recommended the children be detained and placed in a suitable placement.

From April to June 2013, mother was a no show for every drug test. She told the social worker she was rendered unable to test by medical issues, but refused to explain with any more specificity, except directly to the court. As the parents' health insurance would not cover it, D.B. had not yet begun speech therapy. DCFS gave mother some referrals.

A two-day contested hearing on the section 387 petition and DCFS's recommendation to detain the children was conducted in mid-July 2013. Mother testified that she tried to get speech therapy for D.B., but Medi-Cal refused to pay. She had tried to contact the referrals she had received from DCFS; they were either wrong numbers or for inappropriate services.

Mother said she missed one drug test in May because of a medical procedure, and missed another after she forgot to call the testing facility. She missed a test in June because someone close to her passed away, and one in July after forgetting again to call. She denied any current drug use. She completed a six-month treatment program, part of which included a 12-step program. Mother was able to recall only one of the 12 steps. She tested positive for marijuana in December 2012 after completing the treatment program.

Mother explained the events leading to father's arrest in Fall 2012. The family went to a party, at which she had several drinks. Father did not drink alcohol, so they decided he would drive the family home even though they knew it violated the court's order.

Father also testified. He knew, on the day of the incident, that driving with the children violated the court's order. He decided to do so anyway instead of letting mother drive, because she had been drinking. He had asked someone to drive the family home, but they declined, as it was very late at night. Following that incident father cleared all warrants. One resulted in a fine, one was cleared by time served and the third resulted in community service. He was working on the community service three days per week and expected to be done in two months. He acknowledged having missed all but one of the TDM meetings. He did so because he had been looking for work, or in court clearing warrants. Father did not know about mother's drug use until DCFS became involved with the family after A.B.'s birth.

In closing arguments, attorneys for both parents and the children asked that the section 387 petition be dismissed. DCFS argued that more was at issue than mother's positive drug test and the fact that father had violated an order by driving without a license. Rather, the parents were very young, and refused to take matters seriously. For example, even though mother completed a drug program, she had not progressed.

The juvenile court sustained the allegations of the supplemental petition, "because [it found] that it raises issues which are not reflected in the sustained 300 petition." Nevertheless, the court found no justification to remove the children from parental custody. The court ordered mother to participate in another drug and alcohol program, and individual counseling. Both parents were ordered to participate in a one-on-one parenting program using demonstrations and hands on parenting to understand the levels of development and positive discipline. Father was further ordered to participate in individual counseling to address safety issues in order to provide a safe and nurturing environment, and to participate in the family preservation program. Each parent filed a timely appeal.

## DISCUSSION

Both parents maintain the evidence was insufficient to support the juvenile court's order sustaining the section 387 petition because the prior disposition order was

sufficiently effective to protect the children.  Mother further contends there was insufficient evidence to support the court's further dispositional order.

1.    *Legal standard and standard of review for supplemental petition*

"A section 387 supplemental petition is used to change the placement of a dependent child from the physical custody of a parent to a more restrictive level of court-ordered care." (*In re T. W.* (2013) 214 Cal.App.4th 1154, 1161.)  The supplemental petition need not allege new or different facts to support dependency court jurisdiction, which has already been established. (*Ibid*.)  The section 387 petition need only allege facts sufficient to show that the prior dispositional order has not effectively protected the child. (§ 387, subd. (a); *In re T. W.*, at p. 1161; *In re Javier G.* (2006) 137 Cal.App.4th 453, 459–460.)

The adjudication of a section 387 petition proceeds in a bifurcated fashion. (Cal. Rules of Court, rule 5.565(e)[4]; *In re A.O.* (2010) 185 Cal.App.4th 103, 110.)  In the first phase, the court must determine (1) whether the allegations of the supplemental petition are true, and (2) that the previous disposition has been ineffective in protecting the child. (Rule 5.565(e)1); *In re A.O.*, at p. 110.)  At this phase, DCFS bears the burden to show, by a preponderance of evidence, that the factual allegations are true. (Rule 5.565(e)(1)(A); *In re Jonique W.* (1994) 26 Cal.App.4th 685, 691.)  If the juvenile court finds the supplemental factual allegations true, and that the previous disposition has not been effective in protecting the child, it then proceeds to the second, or dispositional phase to determine if removal is appropriate. (Rule 5.565(e)(2); *In re H.G.* (2006) 146 Cal.App.4th 1, 12.)[5]  We review jurisdictional findings for substantial evidence. (*In re T. W.*, *supra*, 214 Cal.App.4th at p. 1161.)

---

[4] Further rule references are to the California Rules of Court.

[5] Here, the juvenile court sustained the factual allegations of the section 387 petition, but denied DCFS's request to remove the children from their parents' custody.

2. *Effectiveness of prior dispositional order*

    a. *Justiciability*

Remarkably, after correctly reciting the legal standards governing adjudication of a section 387 petition, DCFS proceeds with an analysis that snubs those standards and invites us to overlook the unique posture of this appeal. The agency maintains that we need not consider the propriety of the juvenile court's section 387 findings because jurisdiction had been established, the children remained in their parents' custody, and the record supports the court's further dispositional orders, which it claims were reasonable. We reject this contention. In a proceeding under section 387, before the juvenile court may consider a new dispositional order, it first must determine whether the supplemental allegations are true and that its prior dispositional order was ineffective in achieving the pivotal goal of protecting the children. (See *In re Miguel E.* (2004) 120 Cal.App.4th 521, 542.) Only after those findings are made, may the court move on to consider whether removal (or, in this case, additional services) is in order. Without such findings, any further orders lack legal basis. Accordingly, DCFS's contention, that the juvenile court's section 387 findings are not justiciable, is mistaken.

    b. *Allegations of section 387 petition as to mother*

The supplemental petition alleged that mother had a history of substance abuse, a positive drug test result on December 6, 2012, and was a current abuser of marijuana.

The initial sustained petition alleged that mother had an unresolved history of marijuana use which rendered her incapable of providing regular care of the children. The supplemental petition went quite a bit further, alleging that mother had a history of substance abuse, and was a current abuser of marijuana. The fact relied upon to support the new allegations was mother's single positive test for marijuana in December 2012. Mother maintains that the previous jurisdictional findings regarding her unresolved history of marijuana use, with which she does not take issue, remained effective. Relying on *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*), she argues that one positive drug test, approximately four months before the supplemental petition was filed and over seven months before the July 17, 2013 contested hearing, is insufficient to demonstrate

"current abuse or [to] elevate the prior finding of past marijuana 'use' to 'substance abuse.'" We agree.

In *Drake M.*, *supra*, 211 Cal.App.4th 754, a father admittedly used medical marijuana several times per week and had positive drug tests throughout the proceedings. (*Id.* at pp. 758–759.) However, his child was healthy, the father was employed and there was family support. (*Id.* at p. 759.) The court found the father's use of marijuana did not support jurisdictional findings under section 300, subdivision (b), because there was no nexus between the drug use and his ability to care for the child. The court drew a distinction between substance "use" and "abuse" (*id.* at p. 764), and held "mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found." (*Ibid.*) Rather, a finding of substance abuse for purposes of a showing of parental neglect under section 300, subdivision (b), requires evidence sufficient to (1) show that the parent has been diagnosed as having a current substance abuse problem by a medical professional, or (2) establish that the parent has a current substance abuse problem as defined in the DSM–IV–TR. (*Id.* at p. 766.)

In *Drake M.*, *supra*, 211 Cal.App.4th 754, the court found the father was not a substance abuser because there was no evidence he failed to fulfill his work obligations, suffered from substance-related legal problems, drove his car while under the influence of drugs or continued using drugs in the face of social or interpersonal problems caused by drug use. (*Id.* at pp. 767–768.) There was also no evidence the father lacked the ability to supervise or protect his child adequately. On the contrary, the evidence demonstrated the child was healthy, receiving good care and had not been exposed to marijuana or second-hand marijuana smoke. (*Id.* at pp. 768–769.)

So too here. As in *Drake M.*, *supra*, 211 Cal.App.4th 754, a positive result for marijuana from one test in December 2012 is insufficient to support a finding that mother was a substance abuser, and insufficient to elevate the prior finding of a history of marijuana "use" to current "substance abuse." (See *id.* at p. 754.) DCFS failed to present evidence sufficient to sustain the level of proof required by *Drake M.* (*Id.* at p. 766.) Further, as was also the case in *Drake M.*, DCFS presented no evidence of a nexus

between mother's relapse in December 2012 and her ability to care for the children. (*Id.* at pp. 768–769.) The record reflects that mother was employed, and attending school and participating in extracurricular activities with the school. Mother has no criminal history, has never been arrested for driving under the influence and there is no evidence or allegation that marijuana was ever smoked or found in the family home. DCFS never reported that mother appeared to be under the influence, and even father did not know mother used marijuana until she tested positive at the time of A.B.'s birth.

There is no question that mother relapsed at least once, after completing the counseling, NA and drug program required by her case plan. But a parent's mere usage of drugs, without more, is an insufficient ground on which to base dependency court jurisdiction. (See *Drake M.*, *supra*, 211 Cal.App.4th at pp. 764, 766.) Notwithstanding mother's misstep, we are unable to find evidentiary support for DCFS's claim that she failed to demonstrate her ability to "meet the emotional and physical needs of her children." DCFS offered no evidence to substantiate its claim at the time of the hearing, and offered no evidence demonstrating that mother's December 2012 positive test impacted her ability to parent at the time of the July 17, 2013 hearing. On the contrary, as in *Drake M.*, mother appeared well able to fulfill her "major role" and obligation of caring for her children. (See *id.* at p. 766.) After a February 1, 2013, medical appointment, it was reported that D.B. was alert, "well developed" and "well nourished," and bore no acute distress or signs of neglect and/or abuse. A.B. too was described as healthy, alert, well-nourished, with no evident signs of abuse or neglect.

To withstand review, a petition or supplemental petition must contain "a concise statement of facts, separately stated, to support the conclusion that the child upon whose behalf the petition is being brought is a person within the definition of each of the sections and subdivisions under which the proceedings are being instituted." (§ 332, subd. (f).) Further, DCFS must demonstrate a present or future risk of physical harm as a result of the petition's factual allegations. (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1135.)

Here, the agency failed to establish facts sufficient to justify the need for a supplemental petition based on mother's drug use. DCFS failed to identify any incident of harm or neglect to the children. Its concern that the children might be at risk was insufficient to support the court's finding that mother was unable to care for them due to substance abuse. Absent evidence of actual risk, a perception of risk does not constitute substantial evidence. (*In re James R.* (2009) 176 Cal.App.4th 129, 136–137; *In re Janet T.* (2001) 93 Cal.App.4th 377, 389.) DCFS's unsubstantiated perception of risk constitutes an insufficient evidentiary basis to support the court's jurisdictional findings under section 387 that the prior disposition was ineffective. Accordingly, the supplemental petition must be dismissed as to mother.[6]

b.      *Allegations of section 387 petition as to father*

In June 2012, one of the juvenile court's dispositional orders was that father not drive with the children until his traffic warrants were cleared up. Father knowingly violated that order in September 2012, when he chose to drive his family home from a party, rather than let mother drive after she had been drinking. Although father's decision to drive led to his arrest for driving on a suspended license, there is no evidence that choice led to the children being harmed or being placed at substantial risk of serious physical harm.

The supplemental petition filed in March 2013 alleged that father's violation of the order not to drive the children until his warrants were resolved "endanger[ed] the children's physical health and safety and plac[ed them] at risk of physical harm, damage and danger." The juvenile court's jurisdictional findings as to this allegation was made in July 2013, 10 months after father drove the children. By this time, father had cleared his outstanding warrants, but neither he nor mother had a car. The court acknowledged these facts, stating, "that incident happened several months ago. And it really doesn't appear to

---

[6] We need not address the parties' arguments regarding the dispositional orders. Since substantial evidence did not support the jurisdictional findings as to the section 387 petition, the disposition orders must also be reversed.

me, given the fact that mother and father don't have vehicles as we speak, that there should be a risk."

The section 387 petition must allege facts sufficient to prove the prior dispositional order was ineffective in protecting the children. (*In re Javier G.*, *supra*, 137 Cal.App.4th at p. 460.) The issue at the adjudication hearing on a supplemental petition is limited to the issue of whether the previous disposition was effective in the protection or rehabilitation of the child. (*Ibid.*; rule 5.565(e)(1).)

Father readily acknowledges that his decision to drive with the children in violation of the court order was not a decision to be taken lightly. Nevertheless, there was no showing sufficient to establish that his decision constituted an additional or current risk to his children, such that we could agree that the initial disposition order had become ineffective to protect the children. While a taxi or third party driver would have been a better choice, father chose what he perceived to be a lesser evil among choices available to him, and protected his children by driving them home sober but unlicensed, rather than permitting them to be driven by mother, who was licensed to drive, but had also had several drinks. Further, by the time of the hearing on the section 387 petition, father had cleared the outstanding traffic-related warrants which had been the only stated reason the court ordered him to refrain from driving the children. Even the juvenile court observed that the only alleged issue regarding father was this incident of his having driven the children before clearing his warrants. The court acknowledged that even though father showed poor judgment, the event was unlikely to happen again. The court agreed that during two days of a contested hearing on the supplemental petition, no evidence was offered to show the children were at risk of harm. Indeed, DCFS consistently noted the children were fine in the parents' care.

There is no substantial evidence that the previous disposition was ineffective in protecting the children. The supplemental allegations were improperly sustained.

## DISPOSITION

The matter is remanded with instructions to the juvenile court to reverse the findings sustaining all allegations of the Welfare and Institutions Code section 387 petition, and subsequent dispositional orders.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

ROTHSCHILD, Acting P. J.

MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.